UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANGELO D. JOHNSON,

                Plaintiff,

    v.

REV. BROWN *and* P.O. KOSSEFF-SALCHERT,

                Defendants.

No. 20-CV-3280 (KMK)

OPINION & ORDER

---

Appearances:

Angelo D. Johnson
Romulus, NY
*Pro Se Plaintiff*

Janice Powers, Esq.
Dorothy M. Keogh, Esq.
New York Attorney General's Office
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Angelo D. Johnson ("Plaintiff"), proceeding pro se, brings this Action against Reverend Mary Ann Brown ("Brown") and Rhonda Kosseff-Salchert, Physician's Assistant ("Kosseff-Salchert"; together, "Defendants"), pursuant to 42 U.S.C. § 1983, based on Brown's alleged violation of Plaintiff's First Amendment rights and Kosseff-Salchert's alleged violation of Plaintiff's Eighth Amendment rights via certain events which took place while Plaintiff was incarcerated at Downstate Correctional Facility in Fishkill, NY ("Downstate"). (*See generally* Compl. (Dkt. No. 2).) Before the Court is Defendants' Motion for Summary Judgment (the

"Motion"). (*See* Not. of Mot. (Dkt. No. 35).) For the following reasons, Defendants' Motion is granted.

## I. Background

### A. Factual Background

The following facts are taken from Defendants' Statement pursuant to Local Rule 56.1, (*see* Defs.' Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 36)), and the admissible evidence submitted by Defendants.[1] These facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *See Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021). The facts below are in dispute only to the extent indicated.[2]

---

[1] As explained *infra*, Plaintiff did not respond to Defendants' Motion, and therefore, has not submitted any evidence to the Court.

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). The non-moving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). "Pro se litigants are not excused from meeting the requirements of Local Rule 56.1," *Freistat v. Gasperetti*, No. 17-CV-5870, 2021 WL 4463218, at *1 (E.D.N.Y. Sept. 29, 2021) (italics, alteration, and citation omitted), and "[a] non[-]moving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *see also Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 553 n.3 (S.D.N.Y. 2012) (same). Here, Defendants filed and served their Statement pursuant to Rule 56.1, (*see* Dkt. Nos. 36, 39), and served a Statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2, (*see* Dkt. No. 39). Despite this notice, Plaintiff failed to submit a response either to Defendants' 56.1 Statement, in particular, or Defendants' Motion, in general. Accordingly, the Court may conclude that the facts in Defendants' 56.1 Statement are uncontested and admissible. *See Brandever v. Port Imperial Ferry Corp.*, No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (concluding that because the pro se plaintiff did not submit a Rule 56.1 statement in response to the defendant's statement of facts, "there [were] no material issues of fact"); *Anand v. N.Y. State Div. of Hous. & Cmty. Renewal,* No. 11-CV-9616, 2013 WL 4757837, at *7 (S.D.N.Y. Aug. 29, 2013) (same).

Nevertheless, in light of the "special solicitude" afforded to pro se litigants "when confronted with motions for summary judgment," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d

### 1. Parties' Backgrounds

At all times relevant to the instant Action, Downstate was a maximum-security facility operated by the New York Department of Corrections and Community Supervision ("DOCCS").³ (*See* Defs.' 56.1 ¶¶ 1, 3.) Downstate was used as a reception and classification facility, where inmates would be registered, receive evaluations, and be classified before being transferred to a permanent housing facility. (*See id.* ¶ 3.) Inmate classification includes a health screening, during which health services personnel determine if an inmate has any immediate health-related issues. (*See id.* ¶ 6.) Downstate did not permanently house inmates who required serious or extensive medical care. (*See id.* ¶ 8.)

Plaintiff entered Downstate as a newly-convicted prisoner on September 10, 2018, where he remained until October 28, 2018, when he was transferred to Great Meadow Correctional

---

Cir. 1988), the Court will "in its discretion opt to conduct an assiduous review of the record," including Plaintiff's deposition testimony, when deciding the instant Motion, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quotation marks omitted); *see also Day v. MTA N.Y.C. Transit Auth.*, No. 17-CV-7270, 2021 WL 4481155, at *9 (S.D.N.Y. Sept. 30, 2021) ("[W]here a pro se plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (citation omitted) (first alteration in original)); *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 502 n.1 (S.D.N.Y. 2015) (considering "the statements and documents in [the] [p]laintiff's opposition papers to determine if there are any material issues of fact based on the evidence in the record," but disregarding factual assertions that "do not contain citations to the record, or are not supported by the citations in the record"); *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the [c]ourt has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1."); *Pagan v. Corr. Med. Servs.,* No. 11-CV-1357, 2013 WL 5425587, at *2 (S.D.N.Y. Sept. 27, 2013) (explaining that "[t]he [c]ourt ha[d] considered the [motions for summary judgment] in light of the entirety of the record to afford [the pro se] [p]laintiff the special solicitude to which he [was] entitled" where the plaintiff failed to submit a Rule 56.1 response).

³ Downstate was permanently closed in March 2022. *See New York Closes 6 State Prisons as Inmate Numbers Drop*, NBC NEW YORK (Mar. 10, 2022), https://www.nbcnewyork.com/news/local/new-york-closes-6-state-prisons-as-inmate-numbers-drop/3593510/.

3

Facility ("Great Meadow"). (*See id.* ¶¶ 1–2.) At the time he entered Downstate custody, Plaintiff was suffering from a series of medical conditions concerning his eyes: glaucoma, keratitis, and advanced astigmatism. (*See* Decl. of Janice Powers in Supp. of Mot. ("Powers Decl.") (Dkt. No. 37) Ex. G ("Pl. Dep."), at 6:14–21 (Dkt. No. 37-7).) To treat and manage these conditions, Plaintiff was prescribed medication and needed to use contact lenses. (*See id.* at 6:22–7:15, 8:14–10:10.)

As also relevant to this Action, when Plaintiff entered Downstate custody, he was a Rastafarian. (*See id.* at 14:13–21.) Plaintiff became a Rastafarian in 2013, when he was serving a previous sentence in DOCCS custody, (*see id.* at 14:18–25, 25:4–7), and remained a Rastafarian until 2021, when he became a Jehovah's Witness, (*see id.* at 17:20–18:4, 25:8–14).

### 2. Contact Lenses Incident

On September 19, 2018, approximately one week after Plaintiff arrived at Downstate, Kosseff-Salchert—a licensed Physician's Assistant employed by DOCCS—reviewed Plaintiff's medical records and made an initial referral for Plaintiff to be seen by an optometrist to review his glaucoma medications and determine if he needed additional eye care treatment. (*See* Defs.' 56.1 ¶¶ 16, 19; *see also* Powers Decl. Ex. A ("Kosseff-Salchert Decl."), ¶ 7 (Dkt. No. 37-1).) Kosseff-Salchert is not an eye specialist and accordingly is not able to provide eye care, (*see* Defs.' 56.1 ¶ 18); in fact, DOCCS did not employ an eye specialist to work at Downstate, rather, DOCCS would pool consultation requests for specialists and assign a date for a specialist to visit Downstate to conduct examinations of multiple inmates, (*see id.* ¶¶ 20–22). Accordingly, after Kosseff-Salchert input a referral for Plaintiff to be seen by an optometrist, DOCCS assigned Dr. Richard Wurzel ("Wurzel") to visit Downstate on October 18, 2018. (*See id.* ¶ 23.) Plaintiff claims that he also asked Kosseff-Salchert for new contact lenses, because the ones that he arrived to Downstate with were worn out and needed to be replaced. (*See* Pl. Dep. 41:6–20.)

Wurzel examined Plaintiff on October 18, 2018 and recommended that, given Plaintiff's history of glaucoma, Plaintiff be given ocular tomography and vision field tests. (*See* Defs.' 56.1 ¶¶ 24, 26.) Wurzel also recommended that Plaintiff be considered for contact lenses at his permanent housing facility, given his pathological myopia (i.e., nearsightedness). (*See id.* ¶ 27.) Later that day, after receiving a copy of Wurzel's eye examination record, Kosseff-Salchert entered consultation requests for an ocular tomography test and for a visual acuity test. (*See id.* ¶¶ 28, 29.) However, despite requesting them on multiple occasions, Plaintiff did not receive contact lenses at that time or at any point during his stay at Downstate. (*See* Pl Dep. 47:13–18.)

On December 3, 2018, after Plaintiff was transferred to Great Meadow, a provider noted that Plaintiff should be evaluated for contact lenses per a recommendation from a Downstate provider, (*see* Defs.' 56.1 ¶ 30), but Plaintiff still did not receive new contact lenses, (*see* Pl. Dep. 50:6–18). Plaintiff was later transferred to Coxsackie Correctional Facility ("Coxsackie"), where he was administered the ocular tomography and visual acuity tests on January 28, 2019. (*See* Kosseff-Salchert Decl. ¶ 13.) However, Plaintiff claims he did not receive new contact lenses until many months later, which led him to continuously re-wear the same contact lenses for an extended period of time, (*see id.* at 50:9–20), causing him to suffer eye pain, infections, and double vision, (*see id.* at 36:6–21, 51:10–21).

### 3. Negust Day Incident

As explained above, when Plaintiff entered Downstate in September 2018, Plaintiff was a Rastafarian. While Plaintiff had been registered as such during a previous incarceration, (*see* Pl. Dep. 14:13–21), Plaintiff did not register as a Rastafarian with Downstate until October 22, 2018, (*see* Defs.' 56.1 ¶ 14).

On October 7, 2018, Downstate hosted a ceremony for a Rastafarian holiday called Negust Day. (*See id.* ¶ 10.) Plaintiff was interested in attending the Negust Day celebration—

5

and had informed Brown, Downstate's Chaplain. (*id.* ¶ 9), about his interest in mid-September, (*see* Pl. Dep. 12:24–13:24)—but because he was not registered as a Rastafarian on the day of the celebration, Brown did not allow Plaintiff to attend, (*see* Defs.' 56.1 ¶¶ 11–13).

B. Procedural History

On April 23, 2020, Plaintiff's Complaint was docketed, bringing claims against Defendants in addition to claims against a group of 21 other defendants in connection with alleged incidents that took place when Plaintiff was incarcerated at Great Meadow (in Comstock, NY) and Five Points Correctional Facility (in Romulus, NY) ("Five Points"). (*See* Compl.) On May 14, 2020, Plaintiff's application to proceed in forma pauperis ("IFP") was granted, (*see* Dkt. No. 4), and on June 3, 2020, the Court entered an Order of Service, in which the Court severed and transferred to the Northern District of New York Plaintiff's claims against the 21 defendants against whom Plaintiff brought claims in connection with events that allegedly took place at Great Meadow and Five Points, (*see* Order of Service (Dkt. No. 6)). On September 20, 2020, Defendants filed their Answer. (*See* Answer (Dkt. No. 14).) On April 15, 2021, the Court entered a Case Management Plan, (*see* Case Mgmt. Plan (Dkt. No. 23)), and the Parties proceeded to discovery, (*see* Dkt. Nos. 24–30).

On October 1, 2021, Defendants filed a pre-motion letter in anticipation of filing a motion for summary judgment, (*see* Dkt. No. 31), and the Court adopted a briefing schedule, (*see* Dkt. No. 32). On November 12, 2021, Defendants filed their Motion, Rule 56.1 Statement, and ancillary papers. (*See* Not. of Mot.; Defs.' 56.1; Powers Decl.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 38); Aff. of Service (Dkt. No. 39).) To date, Plaintiff has failed to respond to Defendants' Motion, (*see* Dkt.), however on June 9, 2022, Plaintiff filed a letter to the Court in which Plaintiff explained that he had been unable to litigate his claims against Defendants "for the last 5 months" due to certain medical issues and requested that the Court

6

"provide Plaintiff with all necessary tools to allow Plaintiff the right to effectively litigate his serious claims against [D]efendants." (Dkt. No. 40.) While the Court is sympathetic to Plaintiff's medical challenges, Plaintiff has explained that his medical difficulties began in January 2022, and Plaintiff's response to Defendants' Motion was due in December 2021, (*see* Dkt. No. 34). Moreover, Plaintiff has never sought and does not appear to currently be seeking an extension. (*See* Dkt. No. 40.) As such, the Court will deem Defendants' Motion fully submitted.

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In deciding whether to award summary judgment, the [C]ourt must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d

7

114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

8

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting FED. R. CIV. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (quotation marks omitted)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham,* 848 F.2d at 344; *Mercado v. Div. of N.Y. State Police,* No. 96-CV-235, 2001 WL 563741, at *7 (S.D.N.Y. May 24, 2001) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and quotation marks omitted). Further, "the failure to oppose a motion for summary judgment alone does not justify the granting of summary judgment." *Vt. Teddy Bear Co.*, 373 F.3d at 244; *see also Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (explaining that "an examination of the legal validity of an entry of summary judgment should . . . be[] made in light of the opposing party's pro se status" (italics omitted)). Nonetheless, "proceeding pro se does not otherwise

9

relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Houston*, 27 F. Supp. 3d at 351 (italics and quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same).

B. Analysis

Liberally construed, Plaintiff alleges (1) deliberate indifference to his medical needs, based on Kosseff-Salchert's failure to provide Plaintiff with contact lenses, (*see* Compl. ¶¶ 33–38); and (2) violation of his First Amendment right to freely exercise Rastafarianism, based on Brown's refusal to allow Plaintiff to attend the 2018 Negust Day celebration, (*see id.* ¶¶ 39–44).[4] Defendants argue that they are entitled to summary judgment on both of Plaintiff's claims because there is no dispute that (1) the denial of contact lenses does not constitute a sufficiently serious deprivation for Eighth Amendment purposes and Kosseff-Salchert did not act with deliberate indifference, (*see* Defs.' Mem. 6–12); and (2) requiring registration of an inmate's religion is a constitutionally permissible restriction on an inmate's religious practice, (*see id.* at 3–5). The Court will address each argument, in turn.

1. Eighth Amendment Claim Against Kosseff-Salchert

a. Legal Standard

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "There are two elements to a claim of deliberate indifference to a serious medical condition." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d

---

[4] Plaintiff has brought his claims against both Kosseff-Salchert and Brown in their individual capacities. (*See* Compl. ¶¶ 4, 5)

10

Cir. 2009), *overruled on other grounds by Darnell v. Pineiro*, 581 F.3d 63 (2d Cir. 2017). "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (quotation marks omitted). Under this objective requirement, a court must inquire first, "whether the prisoner was actually deprived of adequate medical care," and second, "whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006); *see also Casanova v. Maldonado*, No. 17-CV-1466, 2021 WL 3621686, at *7 (S.D.N.Y. Aug. 16, 2021) (same). The latter requires the Court "to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. As part of this objective element, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has presented "a non-exhaustive list" of factors to consider: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Casanova*, 2021 WL 3621686, at *7 (explaining that the inquiry of whether "the inadequacy in medical care is sufficiently serious . . . contemplates a condition of urgency that may result in degeneration or extreme pain" (quotation marks omitted)).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Here, the inquiry is whether

11

defendants "knew of and disregarded an excessive risk to [a plaintiff's] health or safety" while "both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also draw the inference." *Caiozzo*, 581 F.3d at 72 (alterations and quotation marks omitted); *accord Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious harm will result." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quotation marks omitted). By contrast, "mere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., . . . a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (quotation marks omitted). Moreover, "mere disagreement over the proper treatment does not create a constitutional claim," and "so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*; *see also Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." (citations omitted)).

b. Application

As to the first element, the Court agrees with Defendants that there is no genuine dispute that "[t]he need for contact lenses is not a sufficiently serious medical condition." (Defs.' Mem. 6.) While Plaintiff has claimed that when he arrived at Downstate in September 10, 2018, his contact lenses were already worn out and needed to be replaced, he has adduced no evidence to demonstrate that the failure to replace his contact lenses during his six-week stay at Downstate caused him to suffer a condition that could "result in degeneration or extreme pain," as required

12

to meet the Eighth Amendment standard. *See Casanova*, 2021 WL 3621686, at *7. It is for this reason that Courts have held that, for instance, where "[the] defendants provided [the plaintiff with] an inadequate supply of proper lens cleaners, disinfectants[,] and eye lubricants, and . . . the unmonitored use of [the plaintiff's] [contact] lenses caused [the plaintiff] an eye infection, discomfort, cloudy vision, irritation, and less than sharp acuity," the condition was "not one of degeneration or extreme pain and [was] not sufficiently serious to constitute cruel and unusual punishment." *Davidson v. Scully*, 155 F. Supp. 2d 77, 88 (S.D.N.Y. 2001); *see also Sanford v. Hayden*, No. 92-CV-7629, 1994 U.S. Dist. LEXIS 21265, at *20–22 (S.D.N.Y. Aug. 29, 1994) (explaining that, inter alia, blurred vision and headaches due to fact that glasses were not replaced did not constitute a medical condition that was sufficiently serious for purposes of either the Eighth or Fourteenth Amendment); *cf. Blanch v. Schiff*, No. 18-CV-838, 2021 WL 1177743, at *14 (S.D.N.Y. Mar. 26, 2021) (explaining, on a motion to dismiss, that the plaintiff's allegations that "he told [the defendant-nurse] during his initial screening that he needed to see an eye doctor regarding glasses and that, despite subsequent complaints regarding pain in his eyes, [the] [p]laintiff was not sent to an eye doctor until [4 months later]" did not suffice for purposes of the Eighth Amendment because "numerous have courts have held that . . . delay in procuring glasses does not amount to a constitutional violation").

While the Second Circuit held in *Koehl v. Dalshiem*, 85 F.3d 86 (2d Cir. 1996), that the consequences resulting from the confiscation of specially prescribed eyeglasses "to avoid double vision and the loss of depth perception that resulted from a prior head injury" were sufficiently serious for purposes of the Eighth Amendment, *id.* at 88, the Court finds that the instant Action is distinguishable. In *Koehl*, the plaintiff provided evidence demonstrating that his vision had severely degenerated as a result of the confiscation of his glasses, explaining that his left eye had

13

"shifted fully into the corner of the socket and [was] almost sightless" and that his visual deficiencies "cause[d] [him] to fall or walk into objects." *Id.* at 87, 88. Here, Plaintiff has adduced no competent evidence to demonstrate that his vision degenerated as a result of Kosseff-Salchert's failure to replace his contact lenses while at Downstate. While during his deposition, Plaintiff generally complained of suffering from such conditions as double vision and eye infections, *see supra* I.A.2., he has failed to put forth any evidence either to support these claims or, critically, to demonstrate that his vision degenerated. *See, e.g.*, *Walton v. Lee*, No. 15-CV-3080, 2019 WL 1437912, at *8 (S.D.N.Y. Mar. 29, 2019) (adopting recommendation to grant summary judgment, finding that "[the plaintiff's] deposition testimony [as to alleged injuries to his head and back as well as a chipped tooth] alone is insufficient to raise an issue of fact" where "there is no evidence of any injuries to his head, back[,] or tooth in any contemporaneous medical reports or any other part of the record"); *Beauvoir v. Falco*, 345 F. Supp. 3d 350, 367 n.5 (S.D.N.Y. 2018) (granting summary judgment on deliberate indifference claim where the plaintiff had testified to severe pain after being pepper sprayed because "there is not one piece of corroborating evidence for [the plaintiff's] testimony" and "[a]ccordingly, the [p]laintiff's testimony is simply self-serving testimony that cannot be used to defeat summary judgment"). As such, *Koehl* is inapposite. Accordingly, the Court finds that Plaintiff has adduced no evidence to create a genuine dispute that he suffered an objectively serious constitutional deprivation.[5]

---

[5] It is also worth noting that even if the Court were to construe Plaintiff's claims of, for instance, "eye infections and double vision," (Pl. Dep. 36:11–21; *see also id.* at 52:24–53:9), as competent evidence of degeneration, Plaintiff has failed to adequately link these complaints specifically to his time at Downstate. During his deposition, Plaintiff complained of issues involving his eyes and vision due to the denial of contact lenses for a period of two years, (*see id.* at 50:9–14), during which time he was housed at no fewer than five facilities, (*see id.* at 51:22–52:18 (referencing prison stays at Downstate, Great Meadows, Five Points, and "Sullivan

14

Even if Plaintiff could demonstrate that he suffered a condition that was sufficiently serious for Eighth Amendment purposes, Plaintiff has failed to demonstrate that Kosseff-Salchert acted with deliberate indifference. It is undisputed that, following Plaintiff's September 10, 2018 arrival at Downstate, Kosseff-Salchert reviewed Plaintiff's medical records and made an initial referral for him to be seen by an optometrist on September 19, 2018. *See supra* I.A.2. Wurzel came to Downstate and examined Plaintiff on October 18, 2018, and recommended that certain follow-up tests be performed. *See id.* Later that same day, Kosseff-Salchert entered consultation requests for these follow-up tests, which were performed approximately three months later, when Plaintiff had been transferred to another facility. *See id.* Plaintiff left Downstate custody on October 28, 2018. *See supra* I.A.1. Put simply, the undisputed evidence establishes that

---

Correction"); 58:17–23 (referencing prison stay at Coxsackie)). Because "[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation," *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013), and Kosseff-Salchert's only contact with Plaintiff was at Downstate, (*see* Defs.' 56.1 ¶¶ 16–31), Kosseff-Salchert could only conceivably be liable for a constitutional violation that took place at Downstate. However, Plaintiff has failed to demonstrate that the various adverse effects of which he complained were the result of Kosseff-Salchert's failure to provide him with replacement contacts at Downstate, as opposed to another individual's failure to provide him with replacement contacts at another facility or even a collection of failures given his alleged need to continuously re-wear the same contact lenses for an extended period of time. *See Doe v. N.Y.C. Dep't of Soc. Servs.*, 649 F.2d 134, 145 (2d Cir. 1981) ("Defendants may be held liable under [§] 1983 if they . . . exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of [the] plaintiff's deprivation of rights under the Constitution."); *Toliver v. City of New York*, No. 10-CV-5806, 2013 WL 6476791, at *5 (S.D.N.Y. Dec. 10, 2013) (recommending grant of summary judgment on deliberate indifference to medical needs claim where "[the plaintiff] has not shown that any harm was *caused by* the delay between the time of the incident and his later treatment by medical staff" (emphasis added)), *report and recommendation adopted*, 2014 WL 549402 (S.D.N.Y. Feb. 11, 2014). Indeed, the record evidence would seem to suggest that Plaintiff's need for contact lenses was not urgent while at Downstate, given that Wurzel only recommended that Plaintiff be considered for contact lenses once Plaintiff arrived at his permanent housing facility. *See supra* I.A.2.

15

Kosseff-Salchert did not ignore Plaintiff's optical health needs or deny Plaintiff optical health care. While Plaintiff may have disagreed with Kosseff-Salchert's treatment plan or preferred that Kosseff-Salchert follow a different treatment plan, these claims are insufficient to demonstrate deliberate indifference. *See Sonds*, 151 F. Supp. 2d at 311 ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference." (collecting cases)); *see also Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *7 (S.D.N.Y. Mar. 29, 2016) ("[T]reatment of a prisoner's medical condition generally defeats a claim of deliberate indifference." (citation omitted)). Moreover, as Defendants point out, (*see* Defs.' Mem. 9–11), because Kosseff-Salchert is only a Physician's Assistant and not an optometrist or ophthalmologist, Kosseff-Salchert was not authorized to provide Plaintiff with a prescription for contact lenses, further undermining any charge of deliberate indifference. *See Romano v. Weinstock*, No. 17-CV-137, 2018 WL 5728064, at *17 (N.D.N.Y. May 30, 2018) (finding that the plaintiff had failed to establish that the defendants "knew of and disregarded an 'excessive risk' to [the plaintiff's] health" where "[t]he record demonstrates that [the defendants] addressed [the] plaintiff's complaints to the extent they had authority"), *report and recommendation adopted*, 2018 WL 4299984 (N.D.N.Y. Sept. 10, 2018); *cf. Alston v. Howard*, 925 F. Supp. 1034, 1040 n.6 (S.D.N.Y. 1996) (finding, on a motion to dismiss, that the plaintiff could not state a claim for deliberate indifference against a nurse "who had no authority to prescribe or deny him" the sought-after medical treatment).

      Accordingly, the Court finds that Kosseff-Salchert is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

### 2. First Amendment Claim Against Brown

#### a. Legal Standard

It is well-established that the First Amendment affords inmates constitutional protection to practice their religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (explaining that "[i]nmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion" (citation omitted)); *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (explaining that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause"). However, because of inmates' unique circumstances, their free exercise rights are necessarily more constrained than those of other persons. *See Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990) ("Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, are the interests of prison officials charged with complex duties arising from administration of the penal system." (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974))).

A prisoner's free exercise claims are therefore "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Ford*, 352 F.3d at 588 (quoting *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988)). To succeed on a free exercise claim, an inmate must "show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *McLeod v. Williams*, No. 18-CV-115, 2020 WL 2512164, at *3 (S.D.N.Y. May 15, 2020) (quoting *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019)); *see also Salahuddin*, 467 F.3d at 274–75 (same). "To demonstrate a 'substantial burden,' the plaintiff must show that 'the state has put substantial pressure on him to modify his behavior and to violate his beliefs.'" *Wilson v. City of New York*, No. 18-CV-2262, 2021 WL 5908860, at *4 (E.D.N.Y. Dec. 14, 2021) (alterations omitted) (quoting *Rossi v.*

17

*Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015)). That is, "[t]he relevant question in determining whether [the inmate's] religious beliefs were substantially burdened is whether participation in the [religious activity], in particular, is considered central or important to [the inmate's religious] practice." *Ford*, 352 F.3d at 593–94. The Second Circuit has made clear that "establishing a substantial burden is 'not a particularly onerous task.'" *Brandon*, 938 F.3d at 32 (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004)). "Once [an inmate] establishes this burden, '[t]he defendant[] then bear[s] the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct.'" *Smith v. Perlman*, No. 11-CV-20, 2012 WL 929848, at *7 (N.D.N.Y. Mar. 19, 2012) (second alteration in original) (quoting *Salahuddin*, 467 F.3d at 308); *see also Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 83 (2d Cir. 2021) ("A prisoner's [F]irst [A]mendment right to the free exercise of his religious beliefs may only be infringed to the extent that such infringement is reasonably related to legitimate penological interests." (quoting *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir. 1989))). The burden remains with the inmate "to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (alteration and quotation marks omitted).

### b. Application

Even assuming arguendo that Plaintiff could demonstrate that Brown's conduct substantially burdened his sincerely held religious beliefs, the Court finds that Defendants have identified a legitimate penological interest that Plaintiff cannot rebut. The record demonstrates that Brown did not allow Plaintiff to attend the 2018 Negust Day celebration because he was not registered as a Rastafarian at that time, *see supra* I.A.3., and as Brown has explained "[i]t is a critical security concern that prisoners follow the rules and do not seek to control their own movement by claiming they have a right to attend events around the prison for which they are

18

not registered," particularly at a maximum-security facility like Downstate. (Powers Decl. Ex. B ("Brown Decl."), ¶ 8 (Dkt. No. 37-2).) Indeed, the Second Circuit has explained in no uncertain terms that "[r]egistration of religious affiliation . . . serv[es] several legitimate penological interests," because it "eliminates speculation and guesswork on the part of prison officials and makes it less likely that a prisoner will manipulate the system by asserting various religions at different times"; "allows prison officials to gauge the interests in any particular religion on the part of the inmate population and thus decide whether a 'congregation' should be allowed"; and "puts the institution on notice that certain religious accommodations will likely be sought and thereby provides the institution with time to consider if and how to implement them," which, "in turn, makes such accommodations more likely and thereby reduced the circumstances in which judicial intervention will be needed." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096–97 (2d Cir. 1997); *accord Johnson v. Delaunay*, No. 09-CV-2462, 2010 WL 2541358, at *3–4 (S.D.N.Y. June 18, 2010). Plaintiff has put forth neither evidence nor argument to rebut these well-settled concerns.

Accordingly, the Court finds that Brown is entitled to summary judgment on Plaintiff's First Amendment claim.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted.

The Clerk of Court is directed to terminate the pending Motion, (*see* Dkt. No. 35), enter judgment for Defendants, mail a copy of this Opinion & Order to Plaintiff, and close this case.

SO ORDERED.

Dated: July 19, 2022
       White Plains, New York

                                            KENNETH M. KARAS
                                            United States District Judge